IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| Jennifer Marie Davis, | ) | |
|---|---|---|
| | ) | Cr. No. 3:06-452 |
| Movant, | ) | Cr. No. 3:06-858 |
| | ) | |
| vs. | ) | |
| | ) | **ORDER AND OPINION** |
| United States of America, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

I. FACTS AND PROCEDURAL HISTORY

Movant Jennifer Marie Davis was indicted for conspiracy to manufacture, possess with intent to distribute, and to distribute 50 grams or more of methamphetamine and 500 grams or more of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) (Count 1); possession with intent to distribute and distribution of a quantity of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Count 7); possession with intent to distribute a quantity of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Count 12); possession of equipment, chemicals, products, and materials which may be used to manufacture a controlled substance, in violation of 21 U.S.C. §§ 843(a)(6) and 843(d)(2) (Counts 23, 26); and creating a substantial risk to human life while manufacturing and attempting to manufacture a controlled substance, in violation of 21 U.S.C. § 858 (Count 24). See United States v. Greene, 3:06-452. Movant failed to appear at a pretrial conference on May 23, 2006, and a bench warrant was issued for her arrest. Movant was apprehended and subsequently was indicted for failing to appear, in violation of 18 U.S.C. §§ 3146(a)(1) and 3146(b)(1)(A)(i) (Count 1). See United States v. Davis,

3:06-858.

Movant entered into plea agreements as to Count 1 of each indictment on January 29, 2007, and amended January 30, 2007. Movant's guilty plea in each case was entered January 30, 2007. Movant subsequently testified at the trial of co-defendant Brian Keith Watts in October 2007.

A sentencing hearing was held on March 25, 2008. Movant withdrew her objections to the presentence investigation report (PSR). Because of some confusion with certain witness testimony, the government agreed at the sentencing proceeding to reduce the drug weight attributed to Movant. The government also agreed not to pursue a 2-level enhancement for obstruction of justice. These changes reduced Movant's total offense level from 43 to 38, which, combined with Movant's criminal history category of III, yielded a guidelines range of 292 to 365 months incarceration. The government thereupon moved pursuant to U.S.S.G. § 5K1.1 to reduce Movant's sentence by another six levels. The court granted the government's motion and reduced the total offense level to 32, which resulted in a guideline range of 151 to 188 months. Movant was sentenced to 151 months incarceration on the conspiracy count in Cr. No. 3:06-452. Movant also was sentenced to 6 months incarceration on the failure to appear count in Cr. No. 3:06-858, to be served consecutively. Judgment was entered March 31, 2008.

This matter now is before the court on Movant's motions under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence (Entry 750 in Cr. No. 3:06-452; Entry 44 in Cr. No. 3:06-858), which motions were filed March 27, 2009. Movant asserts the following grounds for relief:

> **Ground one**: My sentence was imposed in error where the bulk of my attributed drug quantity was based on a grossly mistaken government summary of a co-defendant's statement.
>
> **Ground two**: My sentence is unlawful because the six point enhancement I received

under § 2D1.1(b)(10)(D) was not supported by adequate factfinding nor consideration of the mandatory four factors in Application Note 20(A).

**Ground three**: My sentence is unlawful because the conduct underlying my 2D1.1(b)(10)(D) 6 point enhancement was not reasonably foreseeable and did not satisfy the 4 factors in Application Note 20(A).

**Ground four**: I am actually innocent of the drug quantity attributed to, and the substantial risk enhancement imposed on, me.

**Ground five**: My defense counsel was ineffective because he failed to review with me prior to sentencing my revised PSR, and he failed to object to the failure to provide us with the Addendum 14 days before sentencing.

**Ground six**: My defense counsel was ineffective because he failed to file a notice of appeal upon my request.

**Ground seven**: My defense counsel was ineffective because he failed to adequately investigate and defend the drug quantity attributed to me at sentencing, in particular by ensuring witness availability.

**Ground eight**: My defense counsel was ineffective because he failed adequately to investigate and defend my 6 point enhancement under 2D1.1(b)(10)(D).

Entry 750, 2-3; Entry 44, 2-3.

The government filed a response in opposition on June 17, 2009. By order filed June 17, 2009, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Movant was advised of the dismissal procedures and the possible consequences if she failed to respond adequately. Movant filed no response to the government's opposition.

In its opposition, the government acknowledged that a hearing was necessary to resolve the factual issue of whether Movant communicated to defense counsel a request to appeal her sentence. Accordingly, the court held an evidentiary hearing on April 19, 2010. See Rule 8, Rules Governing Section 2255 Proceedings.

## II. DISCUSSION

Because Movant withdrew at sentencing the objections related to Grounds One, Two, and Three, she is legally barred from raising them now, pursuant to the doctrine of procedural default. See United States v. Sa'ad El-Amin, 373 F. Supp. 2d 574, 577-78 (E.D. Va. 2005) ("The failure to raise a claim at trial and direct appeal generally results in a procedural default barring collateral review, absent a demonstration of cause and prejudice or actual innocence."); United States v. Kiser, 322 F. App'x 293 (4th Cir. 2009) (objection withdrawn at sentencing is waived for purposes of appeal). Even if Movant had not waived Grounds One, Two, and Three, Movant would be barred from collaterally attacking her sentence unless she could show cause and prejudice resulting from the errors of which she complains, or she could demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack. United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1999) (citing cases). The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel. Id. at 493 (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)). In order to demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack, Movant must show actual innocence by clear and convincing evidence. Id. (citing Murray, 477 U.S. at 496). Movant has alleged ineffective assistance of counsel and actual innocence. The court first turns, therefore, to these grounds for relief asserted by Movant.

A.  Ground Six - Counsel Ineffective for Failing to File an Appeal

An attorney who disregards specific instructions from a defendant to file a notice of appeal acts in a manner that is professionally unreasonable. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (citing cases). In the absence of specific instructions, the question is whether trial counsel in fact

4

consulted with the defendant about an appeal. Id. If counsel did consult with the defendant, then counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal. Id. at 478. If counsel has not consulted with the defendant, the court must in turn ask whether counsel's failure to consult with the defendant itself constitutes deficient performance. Id. Counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal, or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. Id. at 479. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights. Id. Further, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed. Id. at 484.

Movant testified at the evidentiary hearing that she had a brief discussion regarding the possibility of an appeal with defense counsel, Lourie A. Salley, III, after the sentencing proceeding. Movant testified that she asked defense counsel if an appeal would be of any benefit, and he responded that he did not think an appeal would result in a new sentence. Movant testified that she did not ask defense counsel at this time to appeal. According to Movant, about a week later she attempted to telephone counsel several times regarding an appeal, but that she was unable to reach his staff or leave a message on his answering machine. Movant testified that she did not attempt to write or otherwise reach defense counsel.

The government presented the testimony of defense counsel. Defense counsel corroborated Movant's version of the facts surrounding their conversation subsequent to the sentencing

5

proceeding. Defense counsel testified that had Movant asked to file an appeal, he would have done so.

Based on her own testimony, defense counsel consulted with Movant about her right to appeal immediately after sentencing, and Movant did not express a desire to appeal at that time. The court finds no foundation in the record to support a finding that Movant at any time informed counsel that she wished to pursue an appeal. Movant's contention is without merit.

B.   Ground Four - Actual Innocence

Movant contends that she is actually innocent of the (1) drug quantity attributed to her in paragraph 64 of the PSR, which the court determined at sentencing to be 712.61 grams of methamphetamine (mixture), and (2) creating a substantial risk of harm to the life of a minor, which resulted in a six-level enhancement as set forth in paragraph 65 of the PSR. See Cr. No. 3:06-452 (Entry 638, 20).

1.   Drug Quantity - Movant contends that the bulk of the methamphetamine attributed to her was based on the mischaracterization of statements given to the government by her co-defendant, Thomas Wymer. Movant testified that she produced four ounces of methamphetamine at a drug house on one occasion only. Movant submitted an affidavit of Wymer wherein he denied stating in an interview with government agents that he had exchanged pseudoephedrine pills for drugs. According to Wymer, he only heard Movant was at that location a couple of times, but he never saw her there himself. See Cr. No. 3:06-452 (Entry 751-2, 1); 3:06-858 (Entry 45-2, 1).

At the evidentiary hearing, the government presented the testimony of Sam Gunter, the law enforcement officer who interviewed Wymer. Gunter testified that, according to Wymer, Wymer would provide Movant with pseudoephedrine pills in exchange for methamphetamine three or four

6

times weekly for two years. Wymer testified to the accuracy of this statement despite the government's agreement to reduce the length of the exchange from two years to two months. The court finds Gunter to be credible and Movant to not be credible with respect to this issue. Movant's contention that she is actually innocent of the drug quantity attributed to her is without merit.

2. <u>Substantial Risk of Harm</u> - On March 1, 2004, a search warrant was executed on the residence Movant shared with a co-defendant, James W. Davis, Jr. Law enforcement officers discovered Movant's eighteen month old daughter, Brianna, in a crib near items used in the manufacture of methamphetamine. Movant received an enhancement pursuant to U.S.S.G. § 2D1.1(b)(8)(c) as a consequence.

Movant testified at the hearing that her mother, Brenda Turner, had been keeping Movant's children. Movant testified that she was unaware that Turner was going to leave Brianna at the Davis residence. Movant denied knowing anything about the situation, including the production of methamphetamine in the residence. Movant also presented the testimony of her mother. Turner testified that she went to the Davis residence to borrow a truck to haul garbage. She testified that she left Brianna in the care of Mr. Davis because she had been unable to locate Movant for three days, and she intended to be gone only a short time to haul trash. Turner denied any knowledge of any methamphetamine activity in the residence.

The government presented the testimony of Mr. Davis. Mr. Davis testified that he had used methamphetamine with Turner, and that Turner would watch Movant's children in exchange for methamphetamine. Mr. Davis testified that he and Movant had been in the process of manufacturing methamphetamine for several days before Turner left Brianna at the residence. According to Mr. Davis, Turner had come to the residence in search of methamphetamine. Mr. Davis testified that

7

Movant had taken the drugs after they had been bagged and had left the house in order to sell them. Therefore, he had no methamphetamine at the residence. Mr. Davis testified at length regarding the process of producing methamphetamine. According to Mr. Davis, Turner became upset and called Movant to tell her that she was leaving Brianna at the residence. Mr. Davis also testified that the manufacture of methamphetamine produces strong odors and left a residue on everything in the house, including the crib in which Brianna was placed.

The government presented the testimony of Thomas Hamilton, who was involved in the search of the Davis residence. Hamilton testified regarding the chemicals located on the premises.

The court finds the testimony of Hamilton and Davis to be credible. The court finds Movant's testimony and the testimony of Turner, Movant's mother, to be not credible. Movant's contention is without merit.

C.   Grounds One, Two, and Three - Direct Appeal Issues

Movant failed to show cause based upon her claim of ineffective assistance of counsel. Movant also has failed to show that she is actually innocent of creating a substantial risk of harm to a child. Because Movant cannot demonstrate ineffective assistance of counsel or actual innocence, she is barred from asserting Grounds One, Two, and Three of her § 2255 motion.

D.   Grounds Five, Seven, Eight - Ineffective Assistance of Counsel

Movant contends she received ineffective assistance of counsel. To prove ineffective assistance of counsel, Movant must show that trial counsel's performance was deficient. See Strickland v. Washington, 466 U.S. 668, 687 (1984). An attorney's performance is deficient when it is not reasonable under prevailing professional norms. Id. at 688. Movant also must demonstrate that she was prejudiced by trial counsel's alleged deficient performance, in that because of trial

counsel's unprofessional errors, the result of the proceeding would have been different. See id. at 694. Strickland requires Movant to "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Id. at 690. The court then must "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id. Even if counsel's performance is outside the wide range of professional assistance, an error by counsel will not warrant setting aside the conviction if the error had no effect on the judgment. Id. at 694.

In Hill v. Lockhart, 474 U.S. 52 (1985), the United States Supreme Court discussed the application of the rule regarding deficient performance in cases where the defendant does not go to trial, but instead enters a guilty plea:

> In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial.

Id. at 57-59 (internal citations omitted).

1. Failure to object (Ground Five) - On February 12, 2007, the United States Probation Office (USPO) issued a joint presentence report (PSR) to which defense counsel filed objections. Specifically, defense counsel objected to a 6-level "child endangerment" enhancement; to a 2-level "dangerous weapon" enhancement; to approximately 8,700 grams of methamphetamine attributed

to Movant by co-defendant Thomas Wymer; and to the failure to reduce Movant's offense level for acceptance of responsibility. A revised PSR was issued on March 19, 2007 that addressed the objections except as to the "dangerous weapon" enhancement, which the parties agreed would not apply. No other changes were made to the PSR. Movant agreed at the sentencing hearing to withdraw her objections to the PSR. The court queried Movant on the record:

> THE COURT: . . . Miss Davis, the original presentence report, you had filed objections to that report. The lawyer has advised the court that you wish to withdraw those objections, is that correct?
>
> DEFENDANT: Yes, ma'am.
>
> THE COURT: The first objection number one, substantial risk of harm, you are withdrawing that objection?
>
> DEFENDANT: Yes, ma'am.
>
> THE COURT: And that was to paragraph 17, 18, 20, 25, and 6, is that correct?
>
> DEFENDANT: Yes, ma'am.
>
> THE COURT: The second objection had to do with drug weights and the objection is to paragraph 25. And you are withdrawing that objection, is that correct?
>
> DEFENDANT: Yes, ma'am.
>
> THE COURT: the third objection was acceptance of responsibility in paragraph 28, and you are withdrawing that objection also?
>
> DEFENDANT: Yes, ma'am.

Cr. No. 3:06-452 (Entry 772); Cr. No. 3:06-858 (Entry 56)

Nevertheless, Movant contends in Ground 5 of her § 2255 motion that defense counsel was ineffective for failing to review the final PSR prior to sentencing "so that we could re-raise and seek to resolve any unresolved objections at my sentencing hearing." Cr. No. 3:06-452 (Entry 750-2, 7),

10

Cr. No. 3:06-858 (Entry 44-2, 7). Movant testified at the evidentiary hearing that she agreed to withdraw her objections to the PSR based upon what defense counsel told her to do.

The government presented the testimony of defense counsel. Defense counsel testified that he was concerned that Movant would perjure herself regarding the child endangerment issue. Defense counsel did not find credible Movant's statement that she had no knowledge Brianna was present in the Davis residence. According to defense counsel, the government was in a position to bring witnesses to dispute Movant's argument. Further, defense counsel did not find Turner to be a credible witness and felt strongly that she should not testify in Movant's behalf. Defense counsel testified that he was concerned not only about losing the § 5K1.1 motion, but also about the possible imposition of an obstruction enhancement, which the government otherwise was willing to drop.

As to the drug weight attributed to Movant at sentencing, defense counsel determined it to be in Movant's best interests to drop this objection because the government agreed to reduce the drug amount attributed to Movant by co-defendant Wymer. Defense counsel further stated that he fully reviewed discovery materials provided by the government and spoke with counsel for co-defendants regarding the amount of methamphetamine involved in the conspiracy. Defense counsel testified that he felt there was no chance to prevail on his objections regarding loss of acceptance of responsibility after Movant failed to appear and a bench warrant was issued for her arrest.

A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, Movant must overcome the presumption that, under the circumstances, the challenged action "'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). In this case, the court concludes that defense counsel articulated reasonable strategic choices based upon a reasonable investigation

of the facts and circumstances. Movant's contention is without merit.

2. <u>Failure to ensure availability of witness (Ground Seven)</u> - Co-defendant Wymer, who at the time was housed at FCI-Edgefield in Edgefield, South Carolina, was made available to appear at a sentencing proceeding for Movant originally scheduled for March 4, 2008. The hearing was cancelled and Wymer was transported back to FCI-Edgefield. According to Rohn Morales, Deputy United States Marshal, the Marshal's Office did not receive notice of the re-scheduled hearing set for March 25, 2008, and Wymer was not brought back to court. Movant asserts that defense counsel provided deficient performance by failing to ensure that Wymer was present to testify at her rescheduled sentencing proceeding. Movant contends that she was prejudiced because Wymer would have testified that he had never seen Movant at a drug house exchanging pseudoephedrine pills for methamphetamine. <u>See</u> Cr. No. 3:06-452 (Entry 751-2).

Defense counsel testified that he spoke with counsel for co-defendants and reviewed discovery regarding the relationship between Movant and Wymer. Defense counsel was able to obtain the government's agreement to adopt his reasoning for reducing the drug weight attributed to Movant by Wymer. Had Movant called Wymer as a witness, his statements would have been rebutted by the testimony of the law enforcement officer who interviewed Wymer. Wymer's testimony could have put Movant at risk of receiving an enhancement for obstruction of justice.

The court concludes that defense counsel's performance was within the wide range of professionally competence representation. Movant's contention is without merit.

3. <u>Ground eight (failing to defend against § 2D1.1(b)(10)(D) enhancement)</u> - Relying on <u>United States v. Konsavich</u>, 232 F. App'x 263 (4th Cir. 20007), Movant contends that defense counsel was ineffective for failing to present a legal defense based upon Application Note 20(A) to

§ 2D1.1, which provides:

(A) <u>Factors to Consider.</u> In determining, for purposes of subsection (b)(10)(C)(ii) or (D), whether the offense created a substantial risk of harm to human life or the environment, the court shall include consideration of the following factors:

(i) The quantity of chemicals or hazardous or toxic substances found at the laboratory, and the manner in which the chemicals or substances were stored.

(ii) The manner in which hazardous or toxic substances were disposed and the likelihood of release into the environment of hazardous or toxic substances.

(iii) The duration of the offense, and the extent of the manufacturing operation.

(iv) The location of the laboratory (<u>e.g.</u>, whether the laboratory is located in a residential neighborhood or a remote area), and the number of human lives placed at substantial risk of harm.

Although the court did not address these factors on the record at the sentencing proceeding, the evidence demonstrates that gas generators were located on the back deck of the Davis residence. Next to the crib where Brianna was placed were bottles of methyl alcohol, hoses, and a deep fryer. In the residence and on the back deck were numerous packs of pseudoephedrine, finished methamphetamine, ether cans, acid generators, and a clear liquid that tested positive for methamphetamine. The chemicals were not stored properly and could have come into contact with Brianna. <u>See</u> PSR ¶¶ 17, 18. A co-defendant, Kenneth Craps, recalled Movant bringing her six or seven year old child to a methamphetamine lab on one occasion. <u>See id.</u> ¶ 20. Further, as Mr. Davis testified, the manufacture of methamphetamine produces a residue that settles on surfaces.

The court discerns no foundation in the record to support a finding that Movant would have prevailed on a challenge to the six-point enhancement applied pursuant to § 2D1.1(b)(10)(D). It is axiomatic that failure to raise a meritless objection cannot serve as a ground for ineffective assistance of counsel. <u>Bolender v. Singletary</u>, 16 F. 3d 1547, 1573 (11th Cir. 1994). Movant's contention is

13

without merit.

### III. CONCLUSION

For the reasons stated, Movant's motions to vacation pursuant to § 2255 (Entry 750 in Cr. No. 3:06-452; Entry 44 in Cr. No. 3:06-858) are denied and dismissed, with prejudice.

**IT IS SO ORDERED**.

/s/ Margaret B. Seymour
United States District Judge

Columbia, South Carolina

April 29, 2010.

**NOTICE OF RIGHT TO APPEAL**

**Movant is hereby notified that she has the right to appeal this order pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.**